IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03423-PAB-KMT

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

A.S. RESEARCH, LLC, also d/b/a ASR and APPLIED SCIENTIFIC RESEARCH LABS,
a limited liability company,
STEPHEN J. YOUNG, individually and as an owner and officer of A.S. RESEARCH,
LLC, and
MICHAEL K. LEDEBOER, individually and as an owner and officer of A.S. RESEARCH,
LLC,

     Defendants.

_____

### PERMANENT INJUNCTION AND MONETARY JUDGMENT
_____

On December 5, 2019, plaintiff Federal Trade Commission ("Commission" or

"FTC") filed its Complaint for Permanent Injunction and Other Equitable Relief

("Complaint") [Docket No. 1], pursuant to Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. § 53(b).  Docket No. 1 at 1, ¶ 1.

The Commission and Defendants having stipulated to entry of a Stipulated Order

for Permanent Injunction and Equitable Monetary Judgment [Docket No. 2-1] and for

good cause shown, the Court hereby enters this Permanent Injunction and Monetary

Judgment ("Order") to resolve all matters in dispute in this action.

Therefore, it is **ORDERED** as follows:

**FINDINGS OF FACT**

1.  This Court has jurisdiction over this matter.

2.  The Complaint charges that Defendants participated in deceptive and unfair acts or practices and false advertising in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52, in connection with the advertising, labeling, promotion, offering for sale, sale, or distribution of Synovia.

3.  Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.  Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.  Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.   "Clear(ly) and Conspicuous(ly)" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both

2

visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.   In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.   The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.   The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.   The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.   When the representation or sales practice targets a specific audience,

such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B.   "Close Proximity" means immediately adjacent to the triggering representation.  In the case of advertisements disseminated verbally or through audible means, the disclosure shall be made as soon as practicable after the triggering representation.

C.   "Covered Product" means any Dietary Supplement, Food, or Drug, including Synovia.

D.   "Defendants" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

    1.   "Corporate Defendant" means A.S. Research, LLC, and its successors and assigns.  A.S. Research, LLC includes ASR and Applied Scientific Research Labs.

    2.   "Individual Defendants" means Stephen J. Young and Michael K. Ledeboer.

E.   "Dietary Supplement" means: (1) any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described

4

above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

F.   "Drug" means: (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

G.   "Essentially Equivalent Product" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

H.   "Food" means: (1) any article used for Food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

## ORDER

## PROHIBITED REPRESENTATIONS: HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION

I. **IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

      A.   Treats or relieves pain, swelling, or stiffness in any joint in the body, completely or to any degree, including pain, swelling, or stiffness due to arthritis, Carpal Tunnel Syndrome, tennis elbow, or any other disease or injury;

      B.   Provides the same joint pain relief as injected medications;

      C.   Rebuilds damaged cartilage;

      D.   Reverses narrowing of joint space caused by arthritis;

      E.   Boosts declining levels of synovial fluid within joints;

      F.   Alleviates the loss of strength caused by tennis elbow;

      G.   Reduces pain-causing acidity to any extent; or

      H.   Cures, mitigates, or treats any disease, unless the representation is

6

non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

**PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS**

II.  **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with

7

any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Representations: Health-Related Claims Requiring Human Clinical Testing For Substantiation, about the health benefits, performance, efficacy, safety, or side effects of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In

addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## PROHIBITED MISREPRESENTATIONS REGARDING TESTS, STUDIES, OTHER RESEARCH, OR INGREDIENTS

III.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.   That any Covered Product is clinically proven to reduce arthritis pain, pain-causing acidity, or restore or repair damaged joint cartilage;

B.   That the performance or benefits of any product are scientifically or clinically proven or otherwise established;

C.   The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

D.   The ingredients in the product, including the amount of any such

ingredients.

## PROHIBITED REPRESENTATIONS REGARDING CONSUMERS OR OTHER ENDORSERS

IV.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents,

employees, and attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order, whether acting directly or

indirectly, in connection with the manufacturing, labeling, advertising, promotion,

offering for sale, sale, or distribution of any goods or services, are permanently

restrained and enjoined from making, or assisting others in making, expressly or by

implication, any misrepresentation concerning or relating to any consumer or other

endorser, including:

A.   Whether such endorser had any experience due to use of an

advertised product or service, and the characteristics of such endorser;

and

B.   About the status of any such person providing a review of the product

or service, including a misrepresentation that the endorser or reviewer is

an independent user or ordinary consumer of the product or service.

## DISCLOSURE OF MATERIAL CONNECTIONS

V.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents,

employees, and attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order, whether acting directly or

10

indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any goods or services, are permanently restrained and enjoined from making any representation, expressly or by implication, about any consumer or other endorser of such good or service without disclosing, Clearly and Conspicuously, and in Close Proximity to the representation, any unexpected material connection between such endorser and 1) any Defendant, or 2) any other individual or entity affiliated with the good or service. For the purposes of this provision, "unexpected material connection" means any relationship that might materially affect the weight or credibility of the testimonial or endorsement and that would not reasonably be expected by consumers.

## PROHIBITED REPRESENTATIONS: EXPERT ENDORSEMENTS

VI.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any goods or services, are permanently restrained and enjoined from:

> A.   Making any misrepresentation concerning or relating to any endorser, including that any such person is an expert with respect to the endorsement message provided by that person; and
>
> B.   Representing that any purported expert has endorsed such good or service unless that person has exercised their purported expertise in the

11

form of an examination or testing of the good or service at least as extensive as experts in the relevant field would normally conduct to support their endorsement.

## PROHIBITED PRICING CLAIMS

VII.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from misrepresenting that paying a premium will allow a consumer to purchase a product with one or more ingredients not available to consumers who do not pay the premium.

## FDA-APPROVED CLAIMS

VIII.   **IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

A.   For any Drug, making a representation that is approved in labeling for such Drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new Drug application approved by the Food and Drug Administration; and

B.   For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated

12

by the Food and Drug Administration pursuant to the Nutrition Labeling

and Education Act of 1990 or permitted under Sections 303-304 of the

Food and Drug Administration Modernization Act of 1997.

### PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

IX.   **IT IS FURTHER ORDERED** that, with regard to any human clinical test or

study ("test") upon which Defendants rely to substantiate any claim covered by this

Order, Defendants shall secure and preserve all underlying or supporting data and

documents generally accepted by experts in the field as relevant to an assessment of

the test, including:

A.   All protocols and protocol amendments, reports, articles, write-ups, or

other accounts of the results of the test, and drafts of such documents

reviewed by the test sponsor or any other person not employed by the

research entity;

B.   All documents referring or relating to recruitment; randomization;

instructions, including oral instructions, to participants; and participant

compliance;

C.   Documents sufficient to identify all test participants, including any

participants who did not complete the test, and all communications with

any participants relating to the test; all raw data collected from

participants enrolled in the test, including any participants who did not

complete the test; source documents for such data; any data dictionaries;

and any case report forms;

D.   All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.   All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.  Provided, however, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part, by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.  For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.  For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected

14

from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

**MONETARY JUDGMENT AND PARTIAL SUSPENSION**

X.   **IT IS FURTHER ORDERED** that:

A.   Judgment in the amount of $4,177,164.00 is entered in favor of the Commission against Individual Defendants and Corporate Defendant, jointly and severally, as equitable monetary relief.

B.   Defendants are ordered to pay to the Commission $821,000.00, which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.  Such payment must be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

C.   The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and

completeness of Defendants' sworn financial statements and related
documents (collectively, "financial representations") submitted to the
Commission, namely:

1.   the Financial Statement of Corporate Defendant A.S.
Research, LLC, signed by Michael K. Ledeboer, Managing Partner,
on June 12, 2019, including the attachments;

2.   the Financial Statement of Individual Defendant Michael K.
Ledeboer, signed on June 6, 2019, including the attachments;

3.   the Financial Statement of Individual Defendant Stephen J.
Young, signed on June 6, 2019, including the attachments;

4.   the additional documentation submitted by letter from
Defendants' counsel Albert S. Watkins, LC, of Kodner Watkins, LC,
to Commission counsel Janet M. Evans dated July 9, 2019,
attaching a document entitled "ConsolidatedNet"; and

5.   the letter from Defendants' counsel Albert S. Watkins, LC, of
Kodner Watkins, LC, to Commission counsel Janet M. Evans dated
July 17, 2019.

D.   The suspension of the judgment will be lifted as to any Defendant if,
upon motion by the Commission, the Court finds that Defendant failed to
disclose any material asset, materially misstated the value of any asset,
or made any other material misstatement or omission in the financial
representations identified above.

16

## **ADDITIONAL MONETARY PROVISIONS**

XI.   **IT IS FURTHER ORDERED** that:

A.   Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.   The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.   The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.   Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.   All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any

attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## CUSTOMER INFORMATION

XII.   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.   Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.   Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security

18

number, other identifying information, or any data that enables access to

a customer's account (including a credit card, bank account, or other

financial account), that any Defendant obtained prior to entry of this Order

in connection with the sale of Synovia; and

C.   Failing to destroy such customer information in all forms in their

possession, custody, or control within 30 days after receipt of written

direction to do so from a representative of the Commission.  Provided,

however, that customer information need not be disposed of, and may be

disclosed, to the extent requested by a government agency or required by

law, regulation, or court order.

## ORDER ACKNOWLEDGMENTS

XIII.   **IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of
receipt of this Order:

A.   Each Defendant, within 7 days of entry of this Order, must submit to

the Commission an acknowledgment of receipt of this Order sworn under

penalty of perjury.

B.   For 5 years after entry of this Order, each Individual Defendant for

any business that such Defendant, individually or collectively with any

other Defendants, is the majority owner or controls directly or indirectly,

and the Corporate Defendant, must deliver a copy of this Order to: (1) all

principals, officers, directors, and LLC managers and members; (2) all

employees having managerial responsibilities for conduct related to the

19

subject matter of the Order, and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## **COMPLIANCE REPORTING**

XIV.   **IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.   Sixty days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of

20

any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.   Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.   Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising

21

under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S.

22

Postal Service) to: Associate Director for Enforcement, Bureau of

Consumer Protection, Federal Trade Commission, 600 Pennsylvania

Avenue NW, Washington, DC 20580.  The subject line must begin: FTC

v. A.S. Research, LLC.

**RECORDKEEPING**

XV.   **IT IS FURTHER ORDERED** that Defendants must create certain records

for 10 years after entry of the Order, and retain each such record for 5 years.

Specifically, Corporate Defendant, in connection with the sale of any goods or services,

and each Individual Defendant for any business that such Defendant, individually or

collectively with any other Defendants, is a majority owner or controls directly or

indirectly, must create and retain the following records:

A.   Accounting records showing the revenues from all goods or services

sold;

B.   Personnel records showing, for each person providing services,

whether as an employee or otherwise, that person's: name; addresses;

telephone numbers; job title or position; dates of service; and (if

applicable) the reason for termination;

C.   Records of all consumer complaints concerning the subject matter of

the order and all refund requests, whether received directly or indirectly,

such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each

provision of this Order, including all submissions to the Commission; and

E.   A copy of each unique advertisement or other marketing material.

## COMPLIANCE MONITORING

XVI.   **IT IS FURTHER ORDERED** that, for the purpose of monitoring

Defendants' compliance with this Order:

A.   Within 14 days of receipt of a written request from a representative of

the Commission, each Defendant must: submit additional compliance

reports or other requested information, which must be sworn under

penalty of perjury; appear for depositions; and produce documents for

inspection and copying.  The Commission is also authorized to obtain

discovery, without further leave of court, using any of the procedures

prescribed by Federal Rules of Civil Procedure 29, 30 (including

telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the Commission is authorized to

communicate directly with each Defendant.  Defendant must permit

representatives of the Commission to interview any employee or other

person affiliated with any Defendant who has agreed to such an interview.

The person interviewed may have counsel present.

C.   The Commission may use all other lawful means, including posing,

through its representatives as consumers, suppliers, or other individuals

or entities, to Defendants or any individual or entity affiliated with

Defendants, without the necessity of identification or prior notice.  Nothing

in this Order limits the Commission's lawful use of compulsory process,

pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.   Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## **RETENTION OF JURISDICTION**

XVII.   **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

DATED July 23, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

25